In re Sample Noel PITTMAN, Bankrupt.

EMB REALTY CORP., Plaintiff,

v.

Sample Noel PITTMAN, Defendant.

Bankruptcy No. 80 B 10602.
Adv. No. 80–5248A.

United States Bankruptcy Court,
S. D. New York.

Dec. 17, 1980.

Louis P. Rosenberg, Brooklyn, N. Y., for plaintiff, by Richard L. Koral, Brooklyn, N. Y., of counsel.

Alfred D. Rodman, Bronx, N. Y., for plaintiff.

Gellis & Melinger, New York City, for debtor.

FINDINGS, CONCLUSIONS, AND ORDER UPON PLAINTIFF'S COMPLAINT FOR RELIEF FROM THE AUTOMATIC STAY PROVIDED BY 11 U.S.C. § 362

BURTON R. LIFLAND, Bankruptcy Judge.

EMB Realty Corp., the plaintiff herein, having commenced an adversary proceeding to vacate the automatic stay provided by Bankruptcy Code § 362 and for leave to continue foreclosure proceedings against premises 253 West 138th Street, New York, and a final hearing of the issues pursuant to § 362(e) having been had on November 18, 1980, the Court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. On July 30, 1975 EMB Realty Corp., ("Plaintiff") sold premises 253 West 138th Street, located in the City, County and State of New York to Sample Noel Pittman ("Debtor" in proceedings commenced under Chapter 13 of the Bankruptcy Code) for the sum of $20,000.00, taking back a purchase money mortgage in the sum of $18,000.00 payable at a rate of 8½% in monthly installments of $210.36 until September, 1986. The mortgage obligated the Debtor, *inter alia* to pay the indebtedness, to maintain fire insurance for the protection of the mortgaged property and to pay the real estate taxes and water and sewer charges as assessed.

2. Payments on the mortgage had been paid up to August, 1977, but no further payments were made to plaintiff beyond that date. As of the date of trial, Debtor is 40 installments in arrears. As stipulated by the parties, the total principal sum remaining due on the mortgage at August 1, 1977 was $15,938.11 and the value of the property is $20,000.00.

3. The plaintiff obtained a judgment in foreclosure from the Supreme Court of the

State of New York on April 22, 1980. The Debtor's instant petition for relief under Chapter 13 was filed on April 28, 1980 and the automatic stay provided by § 362 of the Bankruptcy Code restrained plaintiff from conducting a foreclosure sale. The judgment in foreclosure determined that the amount due on the mortgage as of the date of March 13, 1980 is the sum of $31,657.30 based upon a reference to compute.

4. From the time the Debtor first took title until the date of the trial in this adversary proceeding the Debtor paid no real estate taxes on the property in question. Plaintiff, upon discovering in 1977 that the property was the subject of *in rem* proceedings by the City of New York, paid the tax arrears including statutory interest in the total sum of $2,655.40, and redeemed the property. Plaintiff thereafter continued to pay real estate taxes on a regular basis up to and including the third quarter of 1979 for a total outlay of $4,797.98. As of the date of trial the amount due and owing on taxes and water and sewer charges, including interest was $1,985.52, $1,141.28 of that sum became due since the foreclosure judgment was entered.

5. Upon learning that the Debtor obtained no fire insurance to protect the property, plaintiff obtained fire coverage and paid all premiums. When the Debtor took title to the premises it was covered under plaintiff's blanket policy which included other properties. At the expiration of that policy, plaintiff took out a new policy on the subject property alone. His coverage was cancelled as of November 24, 1979 because the building, being vacant, was not boarded up and sealed according to recognized insurable requirements. No effort was made by the Debtor to improve the security of the building since 1975.

6. The property is, and has been since November 24, 1979 when the plaintiff's last policy was cancelled, uninsured against fire loss. The Debtor offered a writing which he alleged to be a binder obtained on the eve of trial (dated November 17, 1980) but admitted that occupancy of the building was a condition of coverage and that the building, being in a "gutted" condition requires the installation of basic facilities of plumbing, electricity and heating as well as certain structural improvements such as flooring before it attains a condition of habitability and insurability. The building will therefore remain uninhabitable and uninsurable for the foreseeable future as the Debtor has no resources for its rehabilitation (See Finding ¶ 12).

7. The subject premises became encumbered by reason of at least one judgment of record against the Debtor in favor of the United States of America. Although a satisfaction of this judgment was produced, no evidence was adduced that this judgment of record is no longer a lien on the property. Plaintiff's evidence of several additional existing judgments of record was not sustained by the proof offered.

8. The Debtor has proposed in his Plan to pay the Plaintiff $440.56 per month for three years, which payments represent $210.36 as a resumed monthly mortgage payment plus an additional installment payment to make up for arrears including a stated 6% interest thereon. The Debtor proposed to pay towards defaulted payments a total of $7,572.96 ($210.36 × 36), plus 6% interest from the effective date of the Plan. This proposal takes no account of interest accrued during the 40 months since installments were last paid nor does it account for other elements of default including monies laid out by the plaintiff for real estate taxes and insurance premiums. Under this proposal there will be a shortfall of approximately $9,700.

9. In addition to the property in question the Debtor owns two other real estate parcels which include his residence on Convent Avenue in New York, and a residential dwelling in Chicago, Illinois.

10. As to the Debtor's ability to fund his proposed plan, the budget submitted did not account for numerous expenses which the Debtor must incur if he is to carry out his plan, maintain the subject premises, his other real property holdings and survive. The budget:

a) places a total cost for electricity, heat and water at $70.00 while it appears that his actual expenses in the Convent Avenue property, where he resides and rents two apartments, is actually higher. The expenses of the Chicago property are expected to be paid for by the lessee, who Debtor optimistically states will commence a current rental payment stream despite a prior inability to pay. The subject property is, as stated above, vacant and without utility services.

b) sets forth the monthly expenditure of $100.00 for food, or approximately $3.33 per day. Part of these funds are contributed towards the food bill of the Debtor's fiancee as well. This, despite Debtor's statement that he buys a portion of his provisions at wholesale, is wholly inadequate and unrealistic as an estimated expenditure. Debtor testified that he has not been able to stay within his proposed food budget while his case has been pending.

c) makes no provision for insurance. In addition, states that no monies are deducted from his wages for other insurance, although the Debtor testified that it was his understanding that his employer, the Borough of Manhattan Community College, provided medical insurance on a non–contributory basis. Premiums for the insurance that he has tried to obtain for the subject premises as well as premiums for the Convent Avenue property's coverage are not stated in the budget at all. Plaintiff testified that the insurance he had been carrying for the subject premises cost $666.00 per year, and the Debtor stated that the insurance he was arranging to obtain would cost approximately $400.00 per year. This does not include liability or other coverage that would be prudent to maintain in order to protect the assets of this estate from hazard loss.

d) does not take into account other expenses incurred by a property owner and which the Debtor testified that he has incurred in the past. The terms of the tenancy of the Chicago property require the tenant to make all repairs. However, the Convent Avenue property requires maintenance and upkeep for which the Debtor is responsible. The Court finds that there must be an allowance in the budget for a fund available for basic, necessary upkeep costs.

11. The Debtor states that he expects to have a $600.00 income cushion over and above the payments he proposed under the plan. However, this case has been pending for approximately seven months and he has built up no accumulated savings although he made *no* payments to creditors during that time. The Debtor testified that he has not been able to live within the parameters of his budget during the pendency of this proceeding. The Court finds that the budget does not realistically or adequately set forth the Debtor's full expenses and that it will therefore not be feasible for him to carry the subject property and live within the present budget over the duration of the plan.

12. As set forth in Facts ¶ 8, the subject premises are gutted and vacant and therefore uninsurable. As occupancy was made a condition for the granting to Debtor of a fire insurance policy for the subject premises, a significant investment must be made to rehabilitate and renovate this building before protection of plaintiff's collateral can be obtained. Under the Debtor's budget there is no allowance and no room for the investment of any monies of a magnitude sufficient for the needed improvement of these premises. The building at present is a shell (there are no floors, no plumbing and no electricity). Debtor is simply without the means to do the necessary construction.

## CONCLUSIONS OF LAW

In light of the facts set forth above as found by this Court, the following is concluded as a matter of law.

1. The Debtor fails to provide adequate protection for the plaintiff–secured creditor and relief of the automatic stay provided by § 362(a) should be granted pursuant to § 362(d).

a) Because of the Debtor's failure to pay real estate taxes, the subject premises are in immediate danger of falling into *in rem*

proceedings commenced by the City of New York. A property which is not owner–occupied may be the subject of an *in rem* proceeding where the taxes are unpaid for one year. The taxes are behind for five quarters as of the time of trial, from the fourth quarter of 1979 through the fourth quarter of 1980. The Debtor has never once paid real estate taxes on the subject premises and does not demonstrate a financial ability to do so in the future. Therefore the plaintiff's collateral is in danger of loss against which the Debtor does not give adequate protection.

b) Because of the Debtor's inability to obtain fire insurance (Find. ¶¶ 8 and 12) the collateral is in present and continuing danger of destruction with total loss.

c) The Debtor has no equity in the subject premises and the property is not necessary to effect confirmation of a plan. The value of the property is $20,000.00. The extent of secured debt has been fixed by the state foreclosure proceedings as at March 13, 1980 in the sum of $31,657.30. To this sum must be added the real estate taxes assessed and arising due between that date and the date of trial or $1,141.28, making a total sum of $32,798.58.

d) The plan does not now provide, and the Debtor is unable to make periodic payments in an amount sufficient to maintain the mortgage payments, cure the default pursuant to § 1322(b)(5), and pay plaintiff property of a value as of the effective date of the plan, not less than the amount of its claim as required by § 1325(a)(5)(B).

2. Plaintiff is therefore granted judgment for relief of the automatic stay of § 362 and leave to proceed with respect to the judgment of foreclosure in the Supreme Court of the State of New York.

3. The relief granted herein is without prejudice to the Debtors continuing efforts for reconsideration and confirmation of a Chapter 13 plan which would not be based on the retention of the property in question.