**In re EAST–WEST ASSOCIATES, A Limited Partnership, Debtor.**

Bankruptcy No. 88 B 11120 (BRL).

United States Bankruptcy Court, S.D. New York.

Feb. 13, 1990.

Wachtell, Lipton, Rosen & Katz by Theodore Gewertz, New York City, for Carteret Sav. Bank.

Carb, Luria, Glassner, Cook & Kufeld by Stephen J. Falls, New York City, for Carteret Sav. Bank.

Shaw, Licitra, Esernio & Schwartz, P.C. by J. Stanley Shaw, Jeffrey M. Zalkin, Garden City, N.Y., for Committee of Mechanic's Lienors.

Albanese, Albanese & Fiore by Joseph A. Fiore, New York City, for Albanese Development Corp.

MEMORANDUM DECISION ON REMAND OF ISSUES IN DETERMINATION OF ADEQUATE PROTECTION

BURTON R. LIFLAND, Chief Judge.

### BACKGROUND

This case was commenced on May 26, 1988, by the filing of an involuntary Chap-

ter 11 petition against East–West Associates (the "Debtor") by Nastasti–White, Inc., Circle Industries Division, Argus Construction Corp., and U.S.A. Contracting Corp (the "Petitioning Creditors" or "Mechanics Lienors"). The debtor failed to formally appear or answer the petition and a default and order for relief were entered on or about June 13, 1988. By Notice of Motion dated August 4, 1988, Carteret Savings Bank, F.A. ("Carteret") moved for an order pursuant to § 362 of the Bankruptcy Code (the "Code") for relief from the automatic stay to permit Carteret to proceed with a state foreclosure action and to liquidate its mortgage interest in an asset of the estate, to wit, the land and improvements thereon collectively known as and by the street address of 135 West 52nd Street[1], New York, New York, or, in the alternative, for dismissal of the case under Code § 1112(b).

In response to Carteret's motion, the Petitioning Creditors moved for the appointment of a Chapter 11 trustee under Code § 1104(a), or in the alternative, conversion of the case to a Chapter 7 case pursuant to Code § 1112(b). On December 16, 1988, one of the Petitioning Creditors, Nastasi–White, Inc., Circle Industries Division filed a liquidating plan of reorganization funded by a group consisting of Albanese Development Corporation, Breslin Realty Development Corporation and Gary Calmenson (the "Joint Venture").

After an extensive evidentiary hearing with more than a dozen witnesss on the various related motions, on January 25, 1989, this Court entered an order granting Carteret's motion for dismissal unless Carteret received an adequate protection payment[2] in the amount of $871,416 payable on or before January 27, 1989, and $152,000 per month thereafter. On January 27, 1989, the Joint Venture posted the adequate protection payment, thereby extending the automatic stay and preventing Carteret from proceeding with foreclosure.

On February 8, 1989 at 2:15 p.m., Carteret filed a notice of appeal with the Clerk of the Bankruptcy Court. Although there were various matters related to the matter on appeal pending and brought before this Court after that date, counsel for Carteret did not see fit to notify this Court of the appeal until February 13, 1989 at the midpoint of a chambers conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure (the "Federal Rules"). At that time, this Court was informed that Carteret had already spent $38,000 of the $871,416 on receiver's expenses before it appealed the order giving rise to the adequate protection payment. On February 15, 1989, this Court entered an order pursuant to Bankruptcy Rule (the "Rules") 8005 directing the return of the adequate protection payment already paid to Carteret and staying all future adequate protection payments.

Carteret immediately moved by an order to show cause in the District Court which was signed by Judge Ward on February 17, 1989. Judge Ward ordered that the remaining $833,416 be returned to the Joint Venture and placed in escrow, and for Carteret to post an undertaking in the amount of $100,000 to reimburse the Joint Venture for any damages sustained, including the sum of $38,000 already spent by Carteret. The parties entered into a stipulation before District Judge Patterson on March 3, 1989 embodying the decretal paragraphs of Judge Ward's order, and providing for Carteret's appeal of the Rule 8005 order to be consolidated with its appeal of the Code § 362 order.

After briefing and oral argument on the consolidated appeal Judge Conboy, to whom the appeals were assigned, entered an Opinion and Order (the "Order") on November 2, 1989 remanding the case to this Court, 106 B.R. 767.

### ISSUES

On November 2, 1989, Judge Conboy ordered that:

---

**1.** The building contains 45 floors, is nearly completed, but remains wholly unoccupied.

**2.** The District Court left undisturbed this Court's original holding that accumulated adequate protection payments from the date of the request for such relief.

On remand, the Bankruptcy Court must first determine whether, applying the feasibility test, there is an effective reorganization in prospect. If there is no such prospect, the stay should be lifted, the petition should be dismissed, and the funds held in escrow returned to the Joint Venture. If there is such a prospect, the Bankruptcy Court must determine the amount of adequate protection Carteret is entitled to receive, in accordance with the "Adequate Protection" analysis above. See *supra* at 772–74. In addition, the Bankruptcy Court should determine whether Carteret is entitled to receive adequate protection payments for the time that has elapsed since Carteret itself appealed from the Lift Stay Order. Order at 775.

A consent order dated December 8, 1989 was also entered by Judge Conboy which directed this Court to consider the impact of the decision in *In re Parr Meadows Racing Association, Inc.*, ("Parr Meadows") 880 F.2d 1540 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) on the issues on remand now before this Court.

## DISCUSSION

### Effective Reorganization

This Court does not have to deal on remand with the determination of whether under the feasibility test there is an effective reorganization in prospect in light of a letter to this Court dated December 14, 1989 from the bankruptcy counsel for appellant Carteret which stated as follows:

This is to advise you that in order to expedite consideration of the competing liquidating plans filed by Carteret and by certain of the mechanic's lienors, Carteret has today withdrawn that part of its motion which seeks a determination under Section 362(d)(2) that the Property is not necessary for an effective reorganization. As a result, it will not be necessary for you to consider the issues under Section 362(d)(2)(B).

Accordingly, this Court will move on to the determination of the amount of adequate protection Carteret is entitled to receive.

### Adequate Protection

Section 361(1) of the Code provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property.

See, *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *In re Yale Express, Inc.*, 384 F.2d 990 (2d Cir.1967).

This Court's original order on adequate protection awarded Carteret monthly payments of $152,000 based on accruing expenses of $112,000 per month for ad valorem property taxes and $40,000 per month for receiver's expenses. The order also provided for the payment of a lump sum of $871,416 on or before January 27, 1989, which amount included ad valorem property taxes accruing post-petition.

Judge Conboy held:

Carteret *is not* entitled to receive protection for pre-petition interest payments on real estate taxes, as the underlying principal accrued before the automatic stay went into effect. A more difficult question is presented by the post-petition interest on real estate taxes. Since Carteret is entitled to principal payments on real estate taxes in the amount of $112,000 per month during the automatic stay, it would seem that it is also entitled to adequate protection for the interest accruing on unpaid real estate taxes during the stay. *Clearly, the interest on the accruing real estate taxes increases the City of New York's tax lien on the premises along with the principal, thereby decreasing the value of Carter-*

*et's lien on the premises, which is junior to the City's tax lien.* Accordingly, Carteret is entitled to be compensated for this decline in the value of its collateral.

Order at 773 (emphasis added). In light of the *Parr Meadows* decision, *supra,* and in accordance with Judge Conboy's consent order dated December 8, 1989, the analysis by this Court and by the District Court in discussing adequate protection payments for ad valorem property taxes must be reexamined.

*Parr Meadows* invalidated, as violative of the automatic stay imposed by § 362(a) of the Code, real estate tax liens that attached post-petition and that were not saved by the exception in § 362(b)(3) of the Code incorporating the provisions of § 546(b) of the Code. Therefore, liens upon taxes for periods subsequent to the last pre-petition "tax-status date" upon which assessments occur remain valid even if they are for post-petition taxes, while liens for both pre-petition and post-petition taxes assessed subsequent to the last pre-petition "tax-status date" are invalidated. *Parr Meadows,* 880 F.2d at 1546–49. In discussing liens created after the last pre-petition "tax-status date", the court held:

> As to all remaining liens, because the county did not possess, prior to the filing of the bankruptcy petition, a sufficient "interest in property" to qualify for the § 546(b) exception, we must conclude that creation and perfection of each of these later liens violated the automatic stay. Hence, each of these remaining liens is void, and the county stands in the shoes of an unsecured creditor as to the amount due for each of those tax years.

*Id.* at 1548–49; *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80, 86 (3rd Cir.1989).

Carteret attempts to distinguish the factual situation now before this Court from the factual context of *Parr Meadows.* Carteret argues that in *Parr Meadows* there was an undersecured creditor whose liens attached to the proceeds of a chapter 7 liquidation sale under Code § 363. In the present chapter 11 case, Carteret states

that § 1129(a)(9)(A) of the Code provides that for a plan to be confirmed, priority claims under § 507(a)(1), which includes administrative expense claims for post-petition real estate taxes not secured by a lien under § 503(b)(1)(B)(i), must be paid in full on the effective date of the plan unless agreed otherwise by the claimholder. Carteret asserts:

> In the present case, since there are no free assets, the only source for payment of priority taxes is the proceeds of the sale of the Property. To the extent such priority taxes are paid, Carteret will receive dollar for dollar less than it would otherwise receive on account of its lien. Thus, in a real sense under the circumstances of this case, so long as there is a possibility of a plan being confirmed the value of Carteret's collateral continues to be diminished by the accrual of the New York City real estate taxes on the Property which must be paid in cash in full under any plan, whether such taxes are valid liens or priority expenses. Thus, Carteret is entitled to adequate protection for such taxes.

Carteret's Memorandum on Adequate Protection Issues to be Determined on Remand from Orders of District Court ("Carteret's Memorandum") at 5–6.

In its argument Carteret completely ignores the fact that the issues of adequate protection and the confirmation of a plan are separate issues to be determined at independent hearings. The argument also assumes, without factual support, that there will not be an outside funder who comes in and infuses cash under a plan that will be sufficient to make the payments under Code § 1129(a)(9)(A). The possibility that this case could be converted to a case under chapter 7, and thus put in an identical posture as the *Parr Meadows* case, also did not seem to concern Carteret who stated:

> In the event there is no plan, under *Parr Meadows* such priority expenses would not be .paid from the proceeds of the Property, since Carteret is deeply undersecured. In that event, the adequate protection payment would be refunded. Alternatively, such adequate protection

payments could be held in escrow pending resolution of this case.

Carteret's Memorandum at 6 (in footnote).

█ Carteret's arguments are a disingenuous attempt to escape the result of the application of the holding in *Parr Meadows* to this case. Under *Parr Meadows* taxes that are assessed after the last pre-petition "tax-status date" do not acquire a secured status which primes properly perfected pre-petition secured claims. Therefore, in determining adequate protection payments, the logic previously used by both this Court and the District Court, insofar as it presupposed all property taxes accruing obtained senior secured status, was faulty and lead to a flawed analysis. Property taxes which are assessed after the last pre-petition "tax status date" do not decrease the value of a secured claim and, therefore, are not relevant in determining adequate protection payments.

Consideration of the entitlement to adequate protection payments for interest on property taxes needs to be separated into three distinct situations. First, in *Parr Meadows*, the Second Circuit, following the decision of the United States Supreme Court in *United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), which held that oversecured creditors were entitled to post-petition interest regardless of whether the interest obligation was created by agreement, determined that the county was entitled to priority in the sale proceeds for post-petition interest which had accrued on those taxes that were secured by pre-petition liens held to be valid. *Parr Meadows*, 880 F.2d at 1549. Thus, Carteret is entitled to receive adequate protection payments to compensate it for the decrease in the value of its lien caused by the accrual of interest on the oversecured senior tax liens.

Second, Carteret, an undersecured claimant, is not entitled to receive adequate protection for interest on property taxes which do not obtain lien status under *Parr Meadows*. Third, *Parr Meadows* found that there were instances where a lien would attach to post-petition property taxes under a pre-petition "tax-status date" assessment. *Id.* at 1547. In that situation, interest might be allowable as part of adequate protection payments, but there has been no suggestion that those specific facts are presently before this Court. Accordingly, Carteret is entitled to adequate protection payments for interest on property taxes that accrued pre-petition and obtained oversecured senior lien status, but not for interest attributable to any other property taxes.

In regard to the adequate protection payments, Judge Conboy's order provided:

> On remand, the Bankruptcy Court should also provide Carteret compensation for insurance costs of $8,000 per month, which would increase the monthly payments to $162,000 [sic] per month. A secured creditor is entitled to receive insurance costs as part of adequate protection. *See, Greives v. Bank of Western Indiana (In re Greives)*, 81 B.R. 912, 970 (Bankr.N.D.Ind.1987); *In re Pittman*, 7 B.R. 760, 763 (Bankr.S.D.N.Y.1980); *In re Tucker*, 5 B.R. 180, 184 (Bankr. S.D.N.Y.1980). The cost of insurance during the stay should also be added to the lump sum payment.

Order at 773.

*Adequate Protection During Appeal*

Judge Conboy has also stated that "the Bankruptcy Court should determine whether Carteret is entitled to receive adequate protection payments for the time that has elapsed since Carteret *itself* appealed from the Lift Stay Order." Order at 775 (emphasis added).

Rule 8005, in part, provides:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during

the pendency of an appeal on such terms as will protect the rights of all parties in interest.

This Court's Order of February 15, 1989, directing the return of the adequate protection payment and staying all future adequate protection payments was intended to preserve the status quo and the discontinuation of any further related proceedings in the case until after the appeal had been decided. After questions of this Court's subject matter jurisdiction to enter the Order arose, on March 9, 1989 the parties entered into a stipulation before District Judge Patterson embodying the decretal paragraphs of Judge Ward's order to show cause signed on February 17, 1989. Judge Ward's order essentially reiterated this Court's previous order staying the proceedings and preserving the status quo and provided for a consolidated appeal of both orders. The order also provided for the remaining $833,416 of the adequate protection payment to be placed in escrow, and for Carteret to post an undertaking in the amount of $100,000 to reimburse the Joint Venture for any damages sustained, including the $38,000 already spent by Carteret.

Against this background, Judge Conboy stated:

> Because we are remanding this case to the Bankruptcy Court for further proceedings, the jurisdictional question raised by the Rule 8005 Order has effectively been rendered moot. In support of the Bankruptcy Court's action, however, we observe that, had we found in this appeal that the stay should have been lifted for lack of a prospect of an effective reorganization, Carteret would not have been entitled to the adequate protection payment. Put another way, if, as Carteret argues on appeal it should have done, the Bankruptcy Court had lifted the stay, the Bankruptcy Court would not, at the same time, have awarded Carteret adequate protection. Instead, the petition would have been dismissed, and Carteret would have been able to proceed with foreclosure.

Order at 775.

In the oral arguments on appeal on October 19, 1989, Judge Conboy said:

> Let me ask you, why don't you go back to Judge Lifland and ask for a modification of his order? You see, with all due respect, I realize this was a long proceeding before him, but frankly I think it was somewhat high-handed to accept part of his order but not the whole thing, because the way this decree is written, I assume, all of your zeal for your client aside, this order was clearly a unitary order, and the expectation of the judge was that either there was going to be an acceptance of the order in its entirety, [it] or that there was going to be an appeal of it.
>
> But what you basically did here was you put the judge's order in a "if" context, in a structure that he did not intend. It's obvious he didn't intend it. And I don't know why you wouldn't have gone back to him and made the application to modify his order.

Transcript at 19.

■ The issue of whether adequate protection shall be required pending the creditor's appeal of the order providing adequate protection appears to be one of first impression. The cases cited by Carteret all deal with an appeal by the debtor or with a multiple relief situation. *See, State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 758–59 (2d Cir.1977); *Ideal Toy Corp. v. Sayco Doll Corp.,* 302 F.2d 623, 625 (2d Cir.1962); *In re Smoldt,* 68 B.R. 533, 535 (Bankr.N.D.Iowa 1986). In considering this issue, Judge Conboy stated:

> Their argument is that there are cases that say that there are severability principles with respect to the appeal, partial appeal with respect to a judgement. My problem with that is that is not the way the appeal was filed.

Transcript at 49.

It may be true that when a debtor appeals an award of adequate protection, the traditional four-part test for obtaining an injunction must be established in order for the debtor to obtain a stay. *In re Charles & Lillian Brown's Hotel, Inc.,* 93 B.R. 49, 53 (Bankr.S.D.N.Y.1988). The same test

does not apply when the creditor who is awarded adequate protection appeals the award. It would be most inequitable in a court of equity to allow a movant who has received adequate protection payments to keep those payments, with the resultant detriment to the debtor. In this case, however, the circumstances are even more egregious, because the movants herein appealed an order in hopes of obtaining a "no lose result" of even greater payments or dismissal of the case to the detriment of outside funders of a proposed plan.

In the present case, the funders of a proposed plan have had almost $900,000 in adequate protection payments held in escrow or already spent by Carteret, while not being able to go forward with the confirmation of their proposed plan. This Court holds that in the unique situation now before it, Carteret is not entitled to adequate protection payments for the time elapsed since Carteret itself filed the appeal.

### CONCLUSION

In accordance with the foregoing discussion and after consideration of Judge Conboy's Opinion and Order, the papers filed in regard to the issues on remand, and the oral arguments of the parties, this Court holds as follows:

(1) Carteret is not entitled to adequate protection payments for the period of time between the filing of its appeal and thirty days after the District Court's entry of its amended Opinion and Order.[3]

(2) Carteret is not entitled to adequate protection payments on accruing post-petition property taxes under the *Parr Meadows* decision. Under *Parr Meadows* taxes that are assessed after the last pre-petition "tax-status date" do not acquire a secured status which primes properly perfected pre-petition secured claims. Property taxes which are assessed after the last pre-petition "tax status date" do not decrease the value of a secured claim and, therefore, are not relevant in determining adequate protection payments.

(3) Carteret is entitled to adequate protection payments for the expense of property insurance and for the interest accruing on property taxes that have obtained oversecured senior lien status. The *Ron Pair* decision held that the taxing authority was entitled to priority for post-petition interest which had accrued on those taxes that were secured by valid pre-petition liens. Thus, Carteret is entitled to receive adequate protection payments to compensate it for the decrease in the value of its lien caused by the accrual of interest on the oversecured senior tax liens.[4]

Settle an Order reformulating the adequate protection payments in accordance with the foregoing.

---

**3.** See Federal Rules of Appellate Procedure 4, 5, and 6.

**4.** See Discussion at Page 677.