**B.D.W. ASSOCIATES, INC., Debtor,**

v.

**BUSY BEAVER BUILDING CENTERS, INC., Fagen's, Inc. and Jackel Development Co., Appellants.**

No. 88–3528.

United States Court of Appeals, Third Circuit.

Argued Dec. 9, 1988.

Decided Jan. 11, 1989.

Stephen J. Laidhold, Alan B. Gordon (argued), Lampl, Sable, Markoroff & Libenson, Pittsburgh, Pa., for appellants.

Philip E. Beard (argued), William T. Molczan, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for debtor.

Before SLOVITER, BECKER, Circuit Judges, and FULLAM, Chief District Judge *.

FULLAM, Chief Judge.

Appellants petitioned the Bankruptcy Court to have appellee B.D.W. Associates, Inc. declared bankrupt. B.D.W. contested the petition but, after a hearing, the bankruptcy judge granted relief. The debtor appealed, and the district court reversed, ordering dismissal of the petition on the ground that the petitioning creditors lacked standing to obtain the relief they sought, because their claims establish the existence of a bona fide dispute. The petitioning creditors have timely appealed from the district court's order.

## I.

Section 303(b)(1) of the Bankruptcy Code, 11 U.S.C. § 303(b)(1), provides:

"(b) An involuntary case against a person is commenced by the filing with the Bankruptcy Court of a petition under Chapter 7 or 11 of this Title—

"(1) by three or more entities, each of which is either a holder of a claim against such person that is *not* contingent as to liability or *the subject of a bona fide dispute*, or an indenture trustee representing such a holder ..." (emphasis added).

Section 303(h) of the Bankruptcy Code, 11 U.S.C. § 303(h) provides:

"(h) [If the petition is timely controverted], after trial, the court shall order relief against the debtor in an involuntary case ... only if—

"(1) the debtor is generally not paying such debtor's debts as such debts become due *unless such debts are the subject of a bona fide dispute* ..." (emphasis added).

In this case, the debtor having timely controverted appellants' petition, the Bankruptcy Court was required to decide whether the claims of appellants as petitioning creditors were or were not the subject of bona fide dispute. If a bona fide dispute existed, the Bankruptcy Court was obliged to dismiss the petition, rather than resolve the dispute. The district court reversed the Bankruptcy Court's order because, in its view, the bankruptcy judge had resolved a bona fide dispute, rather than permitting the dispute to be resolved in an appropriate forum.

The test to be applied in determining the existence *vel non* of a bona fide legal dispute in this context has been described in various ways. For example, in *In re Johnston Hawks, Ltd.*, 49 B.R. 823 (Bky.Dist. of Hi.1985), a bona fide dispute was defined as "a conflict in which an assertion of a claim or right made in good faith and without fraud or deceit on one side is met by contrary claims or allegations made in good faith and without fraud or deceit on the other side". *Id.* at 830. In *In re Stroop*, 51 B.R. 210 (D.Colo.1985), the test was equated with the standards for granting summary judgment. A more complete formulation was expressed in *In re Lough*, 57 B.R. 993 (Bky.E.D.Mich.1986), *viz*: "If there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed." *Id.* at 997. The Seventh Circuit Court of Appeals has adopted that definition with a gloss, see *In re Busick*, 831 F.2d 745 (7th Cir.1987) ("substantial" factual and legal

---

* Honorable John P. Fullam, United States Chief Judge for the Eastern District of Pennsylvania, sitting by designation.

questions raised by debtor preclude finding of involuntary bankruptcy), which the parties agree is acceptable, and we adopt it here.

Appellants contend that the bankruptcy judge properly determined that appellants' claims against the debtor were not subject to any bona fide dispute. Appellee, on the other hand, argues that appellants could hold the debtor liable for their claims only by establishing a right to pierce the corporate veil—a concept which, they argue, necessarily involves disputed issues inappropriate for resolution by the Bankruptcy Court. These contentions must be evaluated in light of the factual background, which we now summarize.

## II.

Appellants' claims against the debtor B.D.W. Associates, Inc. are predicated upon its contention that B.D.W. Associates was and is the alter ego of Point View Construction Company, Inc., a contracting firm to which appellants sold materials and supplies for which they are owed in excess of $60,000.[1]

Appellants were subcontractors on and supplied materials to a townhouse development project in Pittsburgh, Pennsylvania, known as the Schenley Road Project. B.D.W. is the owner of the project. Point View acted as general contractor on the project.

B.D.W., the debtor, is owned by William B. Bannow and Francis Wymard, who are its only officers. Originally a partnership between Messrs. Bannow and Wymard, B.D.W. was incorporated at the time the Schenley Road Project commenced.

Mr. Wymard also owns and operates a collection agency, known as Wymard & Company. Point View, the alleged general contractor on the project, was incorporated by Ms. Joan Marie Letters, who is nominally its only officer (president and secretary). Ms. Letters is a long-time employee of the collection agency, Wymard & Company. She incorporated Point View at the request of Messrs. Wymard and Bannow.

All three firms—the debtor B.D.W., Wymard & Company, and Point View—operate from the same office, that of Wymard & Company. Point View, the purported general contractor on the construction project, is undeniably a mere shell: it has never had any employees, it has never issued stock, no minute book has ever been maintained, and there have never been any meetings of shareholders or directors. Throughout its corporate existence, Point View has never owned any assets except a telephone, a desk and a chair, all located in the offices of Wymard & Company. Point View's telephone is answered by a secretary in the employ of Wymard & Company. Its total capitalization has never exceeded $700.

To the extent that any bills incurred in the construction of the Schenley Road Project were paid, the funds were supplied by B.D.W., the owner of the project. B.D.W. would transfer funds to Point View, and Point View would pay the bills. But no funds ever accrued to the benefit of Point View, nor did Point View make any charge to anyone for its alleged services as general contractor on the project. Conversely, Point View never paid any rent or incurred any other expenses.

Ms. Letters, the ostensible owner and sole officer of Point View, had no knowledge of the construction business, nor was she ever actively involved in the affairs of Point View. During the six years the Schenley Road Project was under construction, she visited the site only about twice; she did not know how many housing units were being constructed; and she had little or no knowledge of even the identities of the firms with whom Point View had contracted for construction of the project. Ms. Letters regarded herself as a "figurehead" whose sole function was to sign contracts and checks as directed by Messrs. Bannow and Wymard, who made all decisions.

The facts outlined above were set forth in detailed findings by the bankruptcy judge. The evidence on which the findings were based was entirely uncontradicted;

1. Point View Construction Company, Inc. has been adjudicated bankrupt, pursuant to the un-

contested petition of these appellants, but Point View has no assets.

indeed, most of the evidence came from the debtor and witnesses associated with the debtor. Neither before the Bankruptcy Court, nor in the district court, nor in this Court, has anyone identified a single disputed issue of fact. Thus, the district court's judgment can be affirmed only if we conclude that the Bankruptcy Court was presented with "a meritorious contention as to the application of law to undisputed facts."

The factors which bear upon the permissibility of disregarding the corporate form of a legal entity are set forth in *American Bell, Inc. v. Federation of Telephone Workers*, 736 F.2d 879 (3d Cir.1984). They include:

1. Failure to observe corporate formalities;

2. Non-payment of dividends;

3. Insolvency of the debtor corporation;

4. Siphoning off funds of the corporation by the dominant shareholder;

5. Non-functioning of other officers or directors;

6. Absence of corporate records;

7. The fact that the corporation is merely a facade for operations of the dominant stockholder or stockholders; and

8. Gross undercapitalization of the corporation.

The undisputed facts of this case satisfy all of these criteria except the fourth, and that criterion is inapplicable here because Point View had no funds of its own which could be siphoned.

While we readily agree with the apparent conclusion of the district judge that attempts to pierce a corporate veil or impose alter-ego liability may often be subject to conflicting legal arguments of at least colorable merit, we are satisfied that this case involves no such potentially meritorious legal argument. It would be difficult indeed to imagine a clearer case for the invocation of alter ego liability. The owners of the project have arranged to have the liabilities associated with the project—according to the record, in excess of $500,-000 remains unpaid—become the sole responsibility of an entity which, in reality, has never had independent existence, and is a mere shell.

It bears emphasis that the only contention asserted by appellee in support of its claim that a bona fide dispute existed is the fact that, in its opposition to appellants' petition for involuntary bankruptcy, the debtor established that appellants contracted with Point View, and sent their invoices to Point View rather than to the debtor. But that assertion does not amount to a dispute about the debtor's alter-ego liability.

Appellee also seems to argue that it was error for the bankruptcy judge to hold a hearing, and that the mere fact that he found it necessary to hold a hearing or "trial" demonstrates that the bankruptcy judge was resolving disputed issues. This is a *non sequitur*. Section 303(h) of the Bankruptcy Code necessitates a "trial" whenever an involuntary petition is controverted, and makes clear that the object of the inquiry is to determine whether or not the petitioning creditors' claims are subject to bona fide dispute. The bankruptcy judge in this case properly determined that there was no dispute which qualified as "bona fide", and correctly granted relief. The order of the district court will therefore be reversed, and the case remanded with instructions to reinstate the Bankruptcy Court's order.