**In the Matter of CASTLE MALL, INC., Debtor.**

**In the Matter of DELAWARE MALL ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy Nos. 90–685, 90–684.**

United States Bankruptcy Court, D. Delaware.

May 7, 1991.

**338**

Samuel J. Frabizzio, Wilmington, Del.,
Buddy D. Ford, Tampa, Fla., for debtors.

Max S. Bell, Jr., Wilmington, Del., for
The Bank of New York.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy
Judge.

The Bank of New York filed an involuntary Chapter 7 petition against Castle Mall, Inc. and a similar petition against Delaware Mall Associates Limited Partnership on September 21, 1990. The debtors move to dismiss the respective petitions on the grounds that the requirements of 11 U.S.C. § 303 have not been met. Debtors also claim the Bank filed the petition in bad faith and seek attorneys' fees and compensatory and punitive damages.

### I. *Facts*

Castle Mall is a shopping center of approximately 240,000 square feet located near Newark, Delaware. In 1985, Delaware Mall Associates Limited Partnership acquired a property interest in Castle Mall. DMAL subsequently executed a certificate of title granting Castle Mall, Inc., a Delaware corporation, nominal title to the property.

On May 7, 1987, The Bank of New York loaned CMI $5,500,000. In connection with this loan, the parties executed a mortgage, a promissory note for principal and interest, and an assignment of rents and leases. The note was nonrecourse against CMI and

was guaranteed by three limited partners of DMAL. The mortgage secured an interest in the Castle Mall property on behalf of the Bank.

The assignment of rents and leases provided additional security. Through this document, DMAL and CMI assigned their right to collect rents from their lessees at Castle Mall to the Bank. In the assignment document, the Bank then granted DMAL and CMI a license to continue to collect rents in the absence of a default on the other loan documents. In addition to signing the assignment of rents document itself, DMAL gave CMI prior written authority to execute all three loan documents.

On November 3, 1989, the Bank filed a complaint to foreclose upon the Castle Mall property and for the appointment of a receiver in Delaware Chancery Court (C.A. No. 11–205). CMI, the only defendant, filed an answer and counterclaims. Chancery Court appointed an interim receiver on December 27, 1989, to manage and control the Castle Mall property.

On September 21, 1990, the Bank filed two Chapter 7 petitions in this court, one against CMI, and one against DMAL. The next day, CMI filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Florida, Tampa Division. The voluntary petition lists the Bank's claim on the note to be $6,500,000. The Florida proceeding has been stayed pending this court's ruling on the motion to dismiss and, if necessary, on the issue of venue pursuant to Rule 1014.

### II. *The Debtors' Motion to Dismiss*

CMI and DMAL allege three grounds for dismissal pursuant to 11 U.S.C. § 303(b):

1. the Bank's alleged claim against the debtors is subject to a bona fide dispute;

2. the Bank's alleged unsecured claim against the debtors does not exceed by $5,000 the value of its lien on the Castle Mall property; and

3. there are 12 or more holders of unsecured claims against each debtor; therefore, the Bank cannot by itself file an involuntary Chapter 7 petition.

A. The Bank's Rent Claim Against Debtors is Subject to a Bona Fide Dispute

The Bank concedes that because the $5,500,000 loan was nonrecourse, the debtors' default in repaying the loan does not by itself create an unsecured claim upon which an involuntary Chapter 7 petition can be based. Rather, the Bank argues the assignment of rents provides a contractual right to payment that was breached when the debtors defaulted on the promissory note and subsequently continued to accept rents from Castle Mall lessees. DMAL responds that it was not a party to the assignment of rents and thus not obligated to comply with the provisions of the assignment. In addition, both debtors argue that they received no rents after the Bank terminated the license. The debtors conclude that the Bank's claim for rents is subject to a bona fide dispute as to liability and thus does not satisfy 11 U.S.C. § 303(b)(1).

 A bona fide dispute exists if the debtors raise substantial factual or legal issues related to the merits of the Bank's claim. *B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66–67 (3rd Cir. 1989). The court must determine the existence of such factual or legal issues, but it need not resolve them. *Id.* at 68. The burden is on a petitioning creditor to prove that such a bona fide dispute does not exist. *E.g., In re Reid*, 773 F.2d 945, 946 (7th Cir.1985).

 DMAL's argument that it is not obligated on the assignment of rents document does not raise a bona fide dispute. The document refers to DMAL as a party to the assignment. Three partners signed the assignment on behalf of DMAL. DMAL presents no potentially meritorious contention as to why this assignment does not contractually bind DMAL. *See B.D.W.*, 865 F.2d at 68.

 Debtors also argue that whether they received rents after the Bank terminated the license is subject to a bona fide dispute. In analyzing this argument, the court must first determine whether there is a bona fide dispute about the termination date, since the termination date affects the successive factual issue of what rents were received thereafter.

The assignment itself does not define when the license terminates. The Bank argues the license terminated when the debtors defaulted on the note and mortgage and rely upon two Bank letters dated February 17, 1989 and May 19, 1989 giving the debtors notice of default.

The debtors respond that these letters do not clearly terminate the license to collect rents. The letters contain no such express language; in addition, each letter gave an opportunity to cure the default. The debtors also contrast these letters to a third letter dated November 3, 1989, which expressly terminated the license.

The court also notes that the Bank's November 29, 1990 brief states that the termination date "is a matter for argument." Finally, Stephen Ring, a vice-president for the Bank testified on direct that the November 3, 1989 letter "revoked the license of the borrower to collect the rent." In summary, the evidence creates a substantial issue whether the license terminated on November 3, 1989 (as debtors assert) or before (as the Bank asserts).

This substantial issue suffices to create a bona fide dispute as to the Bank's claim for rent, unless the Bank shows that a claim for rent exists after November 3, 1989. This is the Bank's alternative argument.

The Bank relies upon a December 12, 1989 check for $8,600, written on a DMAL account to University Mall Associates. The Bank argues this check evidences DMAL receipt of rental income *after* the termination of the license but before the Chancery Court receiver was appointed. Since DMAL's right to collect rent terminated no later than November 3, the Bank would have a right to payment of this rental income.

The debtors dispute, however, that the $8,600 was rental income received *after* November 3. Specifically, debtors' briefing states that evidence and testimony at the evidentiary hearing established that the $8,600 was received by CMI prior to November 3, 1989. A review of the record

indicates this representation is wholly inaccurate. There is no record evidence supporting the debtors' factual position. However, neither has the Bank referred to any evidence supporting its position that the $8,600 was received after November 3, 1989. In short, the date of receipt of the funds used to pay the $8,600 check is at issue. Thus, the Bank has not met its burden to prove the absence of a bona fide dispute about the Bank's claim for rents allegedly received after the termination date of the license to collect rents.

**B. The Bank's Alleged Rent Claim is Unsecured**

■ The debtors argue that whether the Bank's rent claim "aggregate[s] at least $5,000 more than the value of any lien on property of the debtors securing such a claim[s] held by the holder[s] of such [a] claim" is subject to a bona fide dispute. 11 U.S.C. § 303(b)(1). They focus on the issue of whether the value of the Castle Mall property is less, or at least equal to the Bank's claim on the promissory note for $6,500,000 (according to CMI). Assuming without deciding that debtors raise a substantial issue of fact of the property value, debtors still fail to demonstrate a bona fide dispute. The property value relative to the Bank's claim on the note is irrelevant to Bank's ground for filing the Chapter 7 petitions. The Bank does not contend that its claim for the unpaid principal and interest on the note provide a basis for the involuntary petitions. The Bank relies solely on the alleged rent claim. This claim arises from an alleged breach of the terms of a different document—the assignment of rents. A claim is a right to payment. 11 U.S.C. § 101(4). The assignment of rents provides the basis for a contractual right to payment separate from the right to payment on the note. Delaware courts have also reasoned thus. *In re Fader Motor Co.*, Del.Ch., 245 A.2d 156, 157, 160 (1968).

■ The debtors also argue that the Bank's alleged rent claim does not exceed the value of the property value by at least $5,000. This argument misreads § 303(b)(1). That statute requires the rent claim to exceed by at least $5,000 the value of any lien on property *securing such a claim*. No property secures the Bank's contractual right to rental payments. The debtors' argument is without merit.

Debtors raise several other grounds to support their bona fide dispute argument. The court has considered each and finds each meritless.

**C. The Twelve Creditors Issue**

For the Bank to be able to commence an involuntary Chapter 7 proceeding against either debtor, there must be fewer than 12 creditors, excluding any employee or insider of the debtor. 11 U.S.C. § 303(b)(2). The third of debtors' three prongs to its motion to dismiss avers simply that there are 12 or more unsecured creditors of each debtor. The debtors rely upon a list of 21 alleged creditors contained in the appendix to its November 15, 1990 brief. This number does not include duplicates. DMAL concedes 16 of these are creditors of CMI only, leaving 6 alleged creditors of DMAL. From these initial respective totals, the court eliminates insiders of the debtors, 11 U.S.C. § 303(b)(2); 11 U.S.C. § 101(30), and creditors with no outstanding balances. This leaves a total of 17 from CMI and 4 for DMAL. Therefore, DMAL cannot rely upon § 303(b)(2) in support of its motion to dismiss.

Of the 17 remaining alleged creditors of CMI, at least 10 transacted business with the receiver pursuant to his operation of the Mall, and their claims arise out of these respective transactions. The Bank argues these creditors have claims only against the receiver, not the debtor, and therefore should not be counted.

If these 10 creditors are discounted, less than 12 creditors would remain and the Bank would have standing to file against CMI under § 303(b)(2). In support of its position on this legal issue, the Bank cites cases from West Virginia, South Dakota, and the Fourth Circuit. The debtors cite only Black's Law Dictionary to support their opposing legal position.

Both parties have apparently ignored abundant Delaware law pertinent to this critical issue of whether a creditor has a right to payment from a debtor after a receiver has been appointed to manage the debtor's estate. Section 292(a) of title 8 of the Delaware Code states that title to the property of a corporate debtor vests in the receiver upon his appointment. Numerous Delaware cases construe this section to mean that a creditor's claim after the receiver's appointment is against the receiver only. *E.g., In re Fader,* Del.Ch., 245 A.2d 156, 157 (1968). Section 292(a) does "not apply to receivers appointed *pendente lite.*" This raises the question of whether Delaware law still vests the receiver with title to the debtor's property upon appointment *pendente lite.*

Neither party has briefed this issue. Resolution of this issue as it pertains to debtors' number of creditors argument is not necessary to debtors' motion to dismiss, as the motion will be granted upon an independent ground. *See* Section II. A. *supra.* Under these circumstances, I decline to decide whether CMI has 12 or more creditors under 11 U.S.C. § 303(b).

The debtors' motion to dismiss raises several other grounds. None of these grounds were briefed, and I consider them abandoned.

Because the motion to dismiss will be granted, there is no need to address the venue question.

### III. *The Debtors' Bad Faith Claims*

Debtors allege the Bank filed the two involuntary Chapter 7 petitions in bad faith. Debtors have the burden to show bad faith. *U.S. Fidelity Guaranty Co. v. DJF Realty and Suppliers,* 58 B.R. 1008, 1011 (N.D.N.Y.1986). Debtors have not proved the Bank's motive in filing was to gain control of CMI's business. Neither have the debtors shown that the Bank should have known that the debtors have 12 or more creditors. Debtors' other arguments in support of its bad faith claims are equally unpersuasive.

### IV. *Conclusion*

An order in accordance with this Memorandum Opinion is attached.

#### ORDER

AND NOW, May 7, 1991, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. The Bank of New York's Chapter 7 petition against Delaware Mall Associates Limited Partnership, Case No. 90–684, is DISMISSED.
2. The Bank of New York's Chapter 7 petition against Castle Mall, Inc., Case No. 90–685, is DISMISSED.
3. The request of Delaware Mall Associates Limited Partnership and Castle Mall, Inc. for costs, attorney's fees and damages is DENIED.