**In re Leo C. FRAILEY, t/d/b/a Frailey Trucking, Alleged Debtor.**

**Bankruptcy No. 92–2835–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 22, 1992.

Earl D. Lees, Jr., DuBois, Pa., for alleged debtor.

Richard A. Pollard, Tucker Arensberg, P.C., Pittsburgh, Pa., for petitioning creditor Mid–State Bank.

Robert B. Stewart, III, Huntingdon, Pa., for petitioning creditor Martin Oil Co., Inc.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Alleged debtor Leo C. Frailey seeks to have an involuntary chapter 7 petition brought against him dismissed and also seeks to recover costs and attorney's fees and compensatory and punitive damages from petitioning creditors. Frailey denies that petitioning creditors have standing to bring the petition and asserts that the claim of each petitioning creditor is subject to *bona fide* dispute.

Petitioning creditors maintain that all requirements for bringing an involuntary petition have been met.

The involuntary petition will be dismissed for reasons set forth below. However, alleged debtor's request for costs, attorney's fees, and damages will be denied.

## I

### FACTS

Alleged debtor is in the business of hauling goods and materials. At one time, he owned twenty-six (26) vehicles and engaged twenty-seven (27) independent contractors who hauled in their own vehicles under a license issued to Frailey Trucking, Inc., a corporation owned by Mr. Frailey.

In March of 1990, alleged debtor financed the purchase of several tractors and trailers through Mid–State Bank. He also obtained a line of credit from Mid–State.

In November of 1991, alleged debtor and Frailey Trucking, Inc. brought suit in state court against Mid–State alleging that Mid–State had misapplied funds from checking accounts they had at the bank by honoring checks issued on those accounts that were obvious forgeries. Damages in excess of $1,000,000.00 are sought. The case has not been resolved or adjudicated.

On January 28, 1992, alleged debtor refinanced his debt with Mid–State and executed a judgment note in its favor in the amount of $693,609.17 plus annual interest of 11.5%. Judgment on the note subsequently was entered in state court in that amount. Alleged debtor thereafter filed a motion on May 7, 1991 to strike or to reopen the judgment and to stay execution. The present status of the motion is not known.

Alleged debtor opened a credit account in 1989 with Martin Oil Company, Inc. for purchasing diesel fuel and other supplies for his vehicles from a truck stop owned by Martin Oil. Only vehicles owned by alleged debtor himself were to be serviced under the account.

Martin Oil brought suit in state court against debtor and his former wife in 1991 for the unpaid balance on the account of $59,644.79. Alleged debtor answered the complaint and denied any liability to Martin Oil. He denied that the charges for which Martin Oil seeks to be paid were made by him, by his agents, or by any other party with authority to make such charges to his account. The case has not been resolved or adjudicated.

Alleged debtor also purchased diesel fuel and supplies from L & B Garage, which was owned by the Poormans. On October 31, 1989, alleged debtor and the Poormans executed an article of agreement whereby alleged debtor agreed to purchase L & B Garage from the Poormans. The specifics of the article of agreement are not known. Alleged debtor operated the facility from October of 1989 until May of 1990, when a dispute of unknown origin arose between the Poormans and alleged debtor. A closing on the sale never took place.

Christoff Oil Company, Inc. supplied diesel fuel to L & B Garage from October of 1989 through May of 1990, the period when debtor operated the facility. In 1991, Christoff Oil brought suit in state court against alleged debtor and L & B Garage to recover the unpaid balance of $104,-974.20 for deliveries made during that period. According to Christoff Oil, alleged debtor had ordered the fuel and had agreed to pay for it. Alleged debtor answered the complaint and denied any liability. He denied that he, as opposed to L & B Garage, had ordered fuel from Christoff Oil. The case has not been resolved or adjudicated.

Alleged debtor also opened a credit account with Good Brothers Tire and Service, Inc. in 1989 and began purchasing tires for vehicles he owned. As of March 26, 1991, alleged debtor owed Good Brothers a total of $22,036.00. On April 22, 1991, alleged debtor executed an installment note with Armstrong Consumer Discount in the amount of $22,036.00. The proceeds of the loan were applied towards the debt owed to Good Brothers as of March 26, 1992. Alleged debtor continued thereafter to purchase tires from Good Brothers. Many of the tires thus purchased were recaps.

Good Brothers brought suit against alleged debtor in state court seeking to recover $24,900.98 for tires purchased by alleged debtor for which it had not been paid. Alleged debtor answered the complaint and denied liability. He responded that the tires at issue were defective and claimed that Good Brothers had refused to adjust his account accordingly and had failed to replace them with tires which were merchantable and fit for the purpose for which they had been sold. The case has not been resolved or adjudicated.

On April 20, 1992, alleged debtor executed three (3) deeds conveying various interests in real property held exclusively by him to himself and to his second wife as tenants by the entirety. He also conveyed at that time another parcel of real property owned exclusively by him to himself and to his son. All four (4) conveyances were duly recorded on May 5, 1992.

On June 24, 1992, an involuntary chapter 7 petition was brought by Mid–State Bank, Christoff Oil, Martin Oil, and Good Brothers Tire and Service as petitioning creditors. Mid–State claims that it is owed $713,000.00 for money loaned to alleged debtor. Christoff Oil claims that it is owed $104,974.00 for fuel sold to alleged debtor. Martin Oil claims that it is owed $59,644.00 for fuel sold to alleged debtor. Good Brothers claims that it is owed $24,400.00 for tires sold to alleged debtor.

Alleged debtor answered the involuntary petition on July 2, 1992. He asserts that it should be dismissed because the requirements set forth at 11 U.S.C. § 303 for bringing an involuntary petition have not been met. According to alleged debtor, it should be dismissed because the debts purportedly owed to petitioning creditors are all subject to *bona fide* disputes. Alleged debtor also has brought a "counterclaim" pursuant to 11 U.S.C. § 303(i) in which he seeks to recover costs and attorney's fees and compensatory and punitive damages.

A hearing on the matter was held on August 28, 1992, at which time petitioning

creditors and alleged debtor were permitted to offer evidence.

## II

## ANALYSIS

The involuntary petition in this instance has been brought pursuant to 11 U.S.C. §§ 303(b)(1) and (h)(1), which provide as follows:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such clams aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; ...

(h) if the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute....

These sections basically provide that if the alleged debtor generally is not paying debts as they become due, and an involuntary petition is brought by at least three (3) creditors holding claims which are neither contingent as to liability nor subject to bona fide dispute and which aggregate at least $5,000 more than the value of liens on alleged debtor's property, an order for relief may be entered.

A contested involuntary petition must be closely scrutinized because involuntary bankruptcy is an extreme measure that frequently carries serious consequences for the involuntary debtor, such as loss of credit standing, interference with business affairs, and even public embarrassment. See In re McDonald Trucking Co., Inc., 76 B.R. 513, 516 (Bankr.W.D.Pa. 1987).

The test for determining whether there is a bona fide dispute for purposes of Section 303 is relatively simple and limited in scope. If there is a genuine issue of material fact that bears upon the alleged debtor's liability or a meritorious contention as to the application of law to undisputed facts, there is a bona fide dispute. See BDW Associates, Inc. v. Busy Beaver Building Center, Inc. (In re BDW Associates, Inc.), 865 F.2d 65, 66–67 (3d Cir.1989). An involuntary petition must be dismissed if either disjunct is satisfied. Id.

When it is applying this test, the court must determine whether there is an objective basis for either a legal or a factual dispute concerning the validity of the debt. See Matter of Busick, 831 F.2d 745, 749 (7th Cir.1987). The court need not resolve the dispute but need only determine that it is bona fide. See In re Ramm Industries, Inc., 83 B.R. 815, 822 (Bankr. M.D.Fla.1988). A determination that a dispute is bona fide should not be construed as portending how the court would resolve the merits of the dispute. See In re Lough, 57 B.R. 993, 997 (Bankr.E.D.Mich. 1986).

The petitioning creditor must come forward and establish a prima facie case that no bona fide dispute exists. Once this is done, the burden then shifts to the alleged debtor to present evidence demonstrating that a bona fide dispute does exist. See In re Rimell, 946 F.2d 1363, 1365 (8th Cir.1991), cert. denied, — U.S. —, 112 S.Ct. 2275, 119 L.Ed.2d 202 (1992) (citing to Bartmann v. Maverick Tube Corp., 853 F.2d 1540, 1544 (10th Cir.1988)).

The involuntary petition brought in this case will be dismissed because it has not been brought by at least three (3) creditors having claims that are not subject to bona fide dispute.

## A) *Christoff Oil Company, Inc.*

■ As has been noted, alleged debtor had executed an article of agreement with the owners of L & B Garage in October of 1989 whereby he agreed to purchase the facility from them. Subsequent thereto, alleged debtor operated the facility from October of 1989 until May of 1990. According to Christoff Oil, alleged debtor is liable to it for fuel and other supplies delivered to L & B Garage during that period.

Alleged debtor has raised genuine issues of material fact which bear upon his liability to Christoff Oil. He denies that he was in *exclusive* control of the facility at the relevant time and maintains that he was merely operating the facility as the agent of the owners of the facility, not on behalf of himself. Also, he denies that he ever agreed to personally pay for deliveries made while he was operating the facility. According to alleged debtor, any liability to Christoff Oil belongs exclusively to the Poormans.

The credibility of alleged debtor is not at issue here. However, if his testimony were to be believed by the finder of fact, his liability to Christoff could be affected.

## B) *Martin Oil Company, Inc.*

■ The claim of Martin Oil Company also is subject to *bona fide* dispute.

Alleged debtor denies that he is liable to Martin Oil. According to alleged debtor, only vehicles owned by him were to be serviced on his account with Martin Oil. He further maintains that the charges for which Martin Oil seeks payment were incurred for vehicles not owned by him. Some of the charges, he contends, were for services rendered to drivers of his vehicles who had quit working for him prior to the purchasing of the fuel. He further contends that some of the charges were for fuel purchased by independent contractors who owned their vehicles but who hauled under his permits.

Such allegations, if proved, would seem to have a bearing upon alleged debtor's liability to Martin Oil. At the very least, there is an objective basis for disputing the debt.

## C) *Good Brothers Tire and Service, Inc.*

■ Good Brothers' claim is based on alleged debtor's failure to pay for tires he purchased from them.

Alleged debtor does not deny that he purchased tires from Good Brothers. Rather, he asserts that many of the tires he purchased were defective and maintains that he therefore is entitled to a setoff which is greater than the amount of the debt claimed by Good Brothers.

The basis upon which alleged debtor would be entitled to such a setoff has not been articulated in great detail. However, alleged debtor obviously believes the downtime on his vehicles and the lost profits, as a result of defective tires, exceed the debt owed on the self-same tires. It is not our option to judge the merits of this defense. Suffice it to say this claim is subject to a *bona fide* dispute.

■ Additionally, debtor advises that he has many and various creditors that he pays on a regular basis. No serious challenge was offered to this averment and no serious evidence was offered by the petitioning creditors that debtor was not generally paying his just debts as they became due.

The reason why an involuntary petition was brought at this time is readily discernible. Petitioning creditors are alarmed that alleged debtor recently conveyed a substantial portion of his real property to himself and to his second wife as tenants by the entirety. They understandably are concerned that this property would be immune from levy and execution should they prevail against him in their actions in state court. Their primary motive in bringing this involuntary petition was to avail themselves of various provisions of the Bankruptcy Code in order to avoid those transfers and to make those assets available for distribution to creditors. Although it is easily understood, this reason is inappropriate in this instance.

■ A bankruptcy court should refuse to enter an order for relief where petition-

ing creditors can go into state court to satisfy a debt. *See In re Central Hobron Associates,* 41 B.R. 444, 451 (Bankr.D.Hawaii 1984). The petition should be dismissed if petitioning creditors have adequate remedies under state law. *See In re Kass,* 114 B.R. 308, 309 (Bankr.S.D.Fla. 1990).

Assuming that they prevail in state court, petitioning creditors would appear to have an adequate remedy at state law which would enable them to levy and execute against the real property. If alleged debtor has conveyed his interest in real property so as to place it beyond the reach of his creditors, those conveyances may be avoided as fraudulent under *Pennsylvania* law. *See* 39 P.S. §§ 351 *et seq.* Aside from the fact that this convenient and efficient forum is unavailable, there appears to be little or no prejudice to petitioning creditors if the present involuntary petition is dismissed at this time.

 One final matter remains to be addressed. As noted, alleged debtor asserts that the present involuntary petition was brought in bad faith. He seeks to recover attorney's fees and costs as well as compensatory and punitive damages pursuant to 11 U.S.C. §§ 303(i)(1) and (2), which provide as follows:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
> (1) against the petitioners and in favor of the debtor for—
> (A) costs; or
> (B) a reasonable attorney's fee; or
> (2) against any petitioner that filed the petition in bad faith, for—
> (A) any damages proximately caused by such filing; or
> (B) punitive damages.

Alleged debtor offered no evidence pertaining to these matters at the hearing on its motion to dismiss the involuntary petition. As no evidence relating to costs, damages, and/or attorney's fees was offered at trial, no order directing payment thereof will be entered.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 22nd day of September, 1992, in accordance with the accompanying Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that the involuntary chapter 7 petition brought by petitioning creditors be and is hereby DISMISSED. No attorney's fees, costs, or damages shall be awarded to alleged debtor, Leo C. Frailey, t/d/b/a Frailey Trucking.