**In re MEGATREND TELECOMMUNI-CATIONS, INC., Alleged Debtor.**

**Bankruptcy No. 95–22925.**

United States Bankruptcy Court, D. Connecticut.

March 5, 1996.

Anthony S. Novak, Honor S. Heath and Edward C. Taiman, Jr., Chorches & Novak, P.C., Wethersfield, CT, for Petitioning Creditors.

Russell D. Liskov and Daniel Shepro, Willinger, Shepro, Tower & Bucci, P.C., Bridgeport, CT, for the Alleged Debtor.

Deirdre A. Martini, Asst. U.S. Attorney, Bridgeport, CT, for United States Federal Trade Commission, Creditor.

*MEMORANDUM AND ORDER*

*RE: INVOLUNTARY PETITION UNDER CHAPTER 7*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

On August 17, 1995, Teletarjeta, Inc., Janice DeDonatis d/b/a Eagle Telecommunication Associates and The Phone Card People, Inc. (the "Petitioning Creditors") filed an involuntary petition under Chapter 7 against Megatrend Telecommunications, Inc. ("Megatrend"). Megatrend appeared and submitted an answer to the petition denying that the Petitioning Creditors held claims that are not contingent as to liability or the subject of a bona fide dispute.[1] Megatrend also denied that it was generally not paying its debts as such debts became due.[2] Hearings on the petition started October 17, 1995 and continued intermittently to February 2, 1996, when the hearings concluded. The parties thereafter filed post-hearing memoranda.

### II.

Megatrend is in the business of marketing through dealers with whom it enters into form "dealer agreements" (the "Agreement" or "Agreements"), prepaid long-distance telephone cards (the "Debit Cards") and debit card-dispensing vending machines. The Agreements list Megatrend's principal office address as "1278 Main Street, Suite 127, Watertown, Connecticut." An unrelated business, The Mail Room, which rents out private postal boxes and accepts mail for customers such as Megatrend is located at this address.

Paragraph 22C of each Agreement provides that if "the Company fails to deliver the equipment, supplies or Products from the Initial Purchase Order necessary to begin substantial operation within [thirty days] . . . then upon written notice made by certified return receipt mail to Company, Dealer may void the Agreement and shall be entitled to receive from Company all sums paid the Company."

Megatrend solicits dealers by renting booths at business opportunity shows throughout the country. Each of the Petitioning Creditors entered into Agreements with Megatrend in which they agreed to make initial purchases of "dealer equipment packages" (including Debit Cards). Under

---

1. 11 U.S.C. § 303(b)(1) provides:

   (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
   (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
   11 U.S.C. § 303(b)(1).

2. 11 U.S.C. § 303(h) provides, in pertinent part:
   [A]fter trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
   (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; . . .
   11 U.S.C. § 303(h)(1).

this arrangement, Megatrend also agreed to pay commissions to dealers if the dealers' customers "recharged" the Debit Cards for additional long-distance telephone time.

Megatrend, in turn, purchased blocks of long-distance telephone time from other telecommunication companies, which time it resold to its dealers through the Debit Cards. During the spring of 1995 Megatrend had a serious falling out with its then supplier, International Telemanagement Group, Inc. ("ITG"). On or about July 1, 1995, ITG completely terminated its services to Megatrend, and, as a result, the Debit Cards sold by Megatrend to the dealers became unusable and completely worthless in the hands of the dealers or their customers.

On or about July 13, 1995, Megatrend sent to its dealers an "Emergency Notice" which, *inter alia*, stated that Megatrend was engaged in litigation with ITG; that the Debit Cards sold to dealers are not and would not be usable; that Megatrend had a "new Network Provider"; that dealers "will need to purchase new debit cards" for immediate requirements, and that dealers were invited to seek damages against ITG in a "class action lawsuit." Megatrend sent out a second notice, on July 26, 1995, to its dealers stating, in part, that while "Megatrend, under warranty, will try to repair or ultimately replace the defective cards," dealers should consider a class action against ITG and referred to "successful class action suits against Packard Bell, a computer manufacturer, and Dow Corning in the breast implant suit."

Jack Ciocca ("Ciocca") and Ciocca's wife, Patricia, are Megatrend's sole stockholders. During the hearings, Alan Wittstein ("Wittstein"), as Megatrend's president, testified that Ciocca was Megatrend's former chief operating officer, and presently is in prison (for reasons not disclosed). Wittstein acknowledged that Megatrend, which also sells telephones, had been engaged in litigation for several years with the Federal Trade Commission over certain of Megatrend's business practices.

Wittstein testified that Megatrend is paying all of its bills timely. He conceded that the Petitioning Creditors hold breach of warranty claims against Megatrend, but asserted that such claims are the subject of a bona fide dispute. On the final day of the hearing, Megatrend's attorney advised the court that, since the date of the prior hearing, Wittstein had resigned as Megatrend's president; that no successor had been appointed; that Wittstein refused to appear to complete his testimony, and that subsequent to Wittstein's resignation, Megatrend's books and records had been forwarded from Connecticut to Maine and were presently in the possession of Patricia Ciocca.

Officers of Teletarjeta testified that under its Agreement with Megatrend, entered into on May 1, 1995, Teletarjeta paid $19,900 to Megatrend for 67,500 minutes of long-distance time. The cards which Teletarjeta received from Megatrend could not be used for the purposes purchased, and after numerous telephone calls, letters and faxes to Wittstein which went unanswered, Teletarjeta, on June 9, 1995, demanded return of the money pursuant to paragraph 22C of its Agreement. Megatrend refused to return any money to Teletarjeta.

Janice DeDonatis ("Janice") and her husband, Anthony F. DeDonatis, testified to attending a business-opportunity show where they learned of the dealer arrangement with Megatrend. On January 31, 1995, Janice entered into an Agreement with Megatrend, making an initial cash investment of $5,000 for which she received 750 Debit Cards. Starting in May, 1995, she made 22 phone calls and sent letters to Megatrend concerning the cards not being usable before receiving any response from Megatrend. She finally received a phone call from John Muiller ("Muiller"), a Megatrend employee, who, on July 24, 1995, advised her that Megatrend was not in any position to return any monies and that many problems existed with ITG. On August 8, 1995, Janice sent a certified letter to Megatrend demanding a refund of her investment. She received no response to this letter.

James P. Borts ("Borts"), president of The Phone Card People, Inc., testified that an Agreement with Megatrend was entered into on April 11, 1994. In May or June, 1995, Borts sent Megatrend $5,000 for Debit

Cards, which when received were unusable. When Borts demanded return of the money because the Debit Cards were unusable, Wittstein advised him that Megatrend could not return monies for the nonfunctioning Debit Cards. Muiller told Borts that Megatrend was unable to pay anything to The Phone Card People, whether for unusable Debit Cards or for some $2,000 in commissions previously earned on "recharged" Debit Cards.

Joseph Bruno ("Bruno"), another of Megatrend's dealers, testified to entering into an Agreement on March 8, 1995 with Megatrend, paying $8,500 and receiving 500 Debit Cards. When the Debit Cards became unusable, Megatrend sent Bruno 50 replacement Debit Cards and advised him that that was all Megatrend could replace at that time. He requested and was denied a refund by Megatrend.

Edward C. Taiman, Jr., an attorney, testified that a creditor of Megatrend who supplied the plastic Debit Cards, stated that such creditor was owed $40,000 by Megatrend and was not being paid. Joan Paolino, the owner of the business at the address which Megatrend listed as its main office in Watertown, Connecticut, testified that Megatrend had not paid its bill and owes $176.22 for postal box rental services for March, April and May, 1995. She has since cancelled the postal-box rental agreement with Megatrend.

## III.

■ Megatrend's post-hearing brief concedes that the "Megatrend product became defective [and that] all the petitioning dealers requested that Megatrend refund the monies paid for the product they had purchased." *Megatrend Brief* at 3. Megatrend contends, however, that it had no obligation to dealers under the Agreement except "to honor the product warranty and to replace the defective product with functioning product as allowed under paragraph 8(c) of its dealer agreement." *Id.*

Paragraph 8(C) provides:

Repairs under the Company's standard warranty will be performed at the Company's authorized service center in Watertown, Connecticut, or at such other place as Company shall notify Dealer prior to the return of defective Products....

*Dealer Agreement* at 2.

## IV.

■ "A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was within the actual or presumed contemplation of the parties at the time the original relationship of the parties was created." *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981) (cited with approval by the Second Circuit in *In re B.D. Int'l Discount Corp.*, 701 F.2d 1071, 1073 n. 2 (2d Cir.1983), *cert. denied*, 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983)). "There is no definition of 'bona fide dispute' in the Code." *In re Ross*, 63 B.R. 951, 958 (Bankr.S.D.N.Y.1986). The bankruptcy court determines "whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt" in concluding whether a debt is the subject of a bona fide dispute. *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir.1991), *cert. denied*, 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 202 (1992). *See In re Busick*, 831 F.2d 745, 750 (7th Cir.1987); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir.1988); *B.D.W. Associates, Inc. v. Busy Beaver Bldg. Centers, Inc.*, 865 F.2d 65, 66–67 (3d Cir.1989); *In re Nargassans*, 103 B.R. 446, 449 (Bankr.S.D.N.Y.1989).

■ The court concludes that each of the three Petitioning Creditors holds claims against Megatrend that are not contingent as to liability or the subject of a bona fide dispute. The Second Circuit Court of Appeals, prior to the 1984 amendment to § 303 which added the bona fide dispute language, noted in *In re B.D. Int'l Discount Corp.*, *supra*, at 1077, that "to qualify a claim as a basis for seeking involuntary bankruptcy ... [i]t is sufficient to establish ... that there are good grounds for the claim and that no defenses have been asserted in substantiable form." The 1984 amendment to § 303 is seen as codifying the Second Circuit's inter-

pretation of when a creditor is a proper petitioner in an involuntary case. *See In re Elsa Designs, Ltd.,* 155 B.R. 859, 864 (Bankr. S.D.N.Y.1993). The determination of whether a dispute is bona fide often depends upon an assessment of witnesses' credibility. *In re Rimell,* 946 F.2d at 1365; *In re Elsa Designs, Ltd., supra,* at 864. The court credits fully the testimony given by each of the Petitioning Creditors and that of Joseph Bruno that they are entitled to a refund of their initial payments or to damages for receiving worthless Debit Cards and that no bona fide dispute exists. The court does not credit Wittstein's testimony to the contrary. The failure of the Debit Cards to be usable after their receipt by the dealers and the failure of Megatrend to timely respond to the dealers' complaints constitute a breach of the Agreement with Megatrend. The Petitioning Creditors' claims aggregate at least $10,000, all of which are unsecured.

The court further concludes that Megatrend is generally not paying its debts as they become due where the debts are not the subject of a bona fide dispute. The court credits the testimony of the Petitioning Creditors and their witnesses, that the monies due them, whether for refunds or damages or for commissions, have not been paid. The court also finds that monies due to the lessor of the postal box and to the supplier of plastic Debit Cards have not been paid. The court does not credit the testimony of Wittstein that Megatrend's payments to creditors are current.

### V.

In conformity with the findings of fact and conclusions of law contained herein, it is

ORDERED that relief under Chapter 7 of title 11 of the United States Code be, and hereby is, granted against Megatrend Telecommunications, Inc., and it is

FURTHER ORDERED that a certified copy of this Order be transmitted forthwith to the United States Trustee for this District.

### ORDER

This action having came on for hearing before the Court, Honorable Robert L. Krechevsky, Bankruptcy Judge, presiding, and the issues having been tried and a decision having been duly rendered, it is

ORDERED AND ADJUDGED that relief under Chapter 7 of title 11 of the United States Code be entered against Megatrend Telecommunications, Inc.

FURTHER ORDERED that a certified copy of this Order be transmitted forthwith to the United States Trustee for this District.