223 B.R. 59 (1998)
In re ALLEN-MAIN ASSOCIATES LIMITED PARTNERSHIP, Debtor.
CC BRITAIN EQUITIES, L.L.C., Creditor-Appellant,
v.
ALLEN-MAIN ASSOCIATES LIMITED PARTNERSHIP, Debtor-Appellee.
BAP Nos. 98-50019(L) and 98-50030(Con), Bankruptcy No. 97-25098.
United States Bankruptcy Appellate Panel of the Second Circuit.
Argued June 19, 1998.
Decided July 27, 1998.
*60 Backenroth & Grossman, LLP by Schuyler G. Carroll, New York City, for Appellant.
Brown, Rudnick, Freed & Gesmer by Howard L. Siegel, Hartford, CT, for Appellee.
Before: GERLING, BUCKI, LITTLEFIELD, Jr., JJ.

OPINION
GERLING, Judge.
Appellant CC Britain Equities, L.L.C. ("Appellant" or "Britain") appeals the order of the bankruptcy court dated March 2, 1998, dismissing Britain's involuntary chapter 7 petition against Allen-Main Associates, Ltd. Partnership ("Appellee" or "Allen-Main") pursuant to § 303 of the Bankruptcy Code (11 U.S.C. §§ 101-1330) ("Code"). Appellant argues that the bankruptcy court erred in holding that a secured creditor which holds a nonrecourse note is not eligible to file an involuntary chapter 7 petition as the sole petitioning creditor. It is Appellant's position that a secured creditor may waive its secured claim even if nonrecourse and thereby qualify as the sole petitioning creditor. Appellant also suggests the possibility that a recourse carveout existed pursuant to the terms of its mortgage and/or state law which would entitle it to assert an unsecured claim against Allen-Main distinct from its claim under the nonrecourse note. While Appellant acknowledges that it offered no proof in support of the latter argument at the hearing before the bankruptcy court, it asserts that the argument was made in its post-hearing brief and Appellant was not given an opportunity to provide any evidence to support it. For the following reasons, we affirm the decision of the bankruptcy court.

FACTS
Britain, as the sole petitioning creditor, filed an involuntary chapter 7 petition against Allen-Main on November 26, 1997. Britain is the holder of a nonrecourse note and mortgage against real property owned by Allen-Main and located in New Britain, Connecticut. On December 12, 1997, Allen-Main filed its "Involuntary Answer and Affirmative Defense." The only defense to the involuntary petition was that Britain was not eligible to be the sole petitioner in an involuntary chapter 7 case.
Following a hearing on January 27, 1998, the bankruptcy court issued a "Ruling and Order on Creditor's Involuntary Chapter 7 Petition" on March 2, 1998, dismissing the chapter 7 petition on the basis that Britain was not eligible to act as the sole petitioning *61 creditor. Appellant did not seek a stay of the bankruptcy court's order dismissing the case pending this appeal. It is Appellee's position that the failure to seek a stay renders the appeal moot.

DISCUSSION
A. The Standard for Mootness
In the Second Circuit "a determination of mootness in a bankruptcy matter involves equitable considerations such that an appeal is moot when `even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" In re Pappas, 215 B.R. 646, 649 (2d Cir. BAP 1998) (citations omitted). In this case, although Britain failed to seek a stay pending the appeal, there is no evidence of any comprehensive change of circumstances which would render a reversal of the Order dismissing the petition inequitable. Therefore, the Panel concludes that the matter presently before it is not moot. In the event that the Panel were to reverse the order of the bankruptcy court, the case would simply be reinstated.
B. The Merits
This appeal requires the Panel to interpret Code § 303(b). Because the question before the Panel involves a matter of statutory interpretation, the standard of review is de novo. See General Motors Acceptance Corp. v. Valenti (In re Valenti), 105 F.3d 55, 59 (2d Cir.1997); In re Ionosphere Clubs, Inc., 922 F.2d 984, 988-89 (2d Cir.1990) (citations omitted).
Code § 303(b) provides that
[a]n involuntary case against a person is commenced by the filing with a bankruptcy court of a petition under chapter 7 or 11 of this title (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute . . . if such claims aggregate at least $10,000[1] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable . . ., by one or more of such holders that hold in the aggregate at least $10,000 of such claims . . .
11 U.S.C. § 303(b).
In order to be eligible to file an involuntary petition, Code § 303(b) requires that an entity have a claim against "such person," i.e. the alleged debtor, which is neither contingent as to liability nor subject to a bona fide dispute. In addition, the entity must hold a claim which is in and of itself unsecured to the extent of $10,000 or when combined with the claims of other eligible petitioning creditors, aggregates at least $10,000 in unsecured amount. See In re East-West Assocs., 106 B.R. 767, 770 (S.D.N.Y.1989).
There is nothing in the Code which prevents a fully secured creditor from filing an involuntary petition. See Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 49-50 (3d Cir.1988); In re Everett, 178 B.R. 132, 142 (Bankr.N.D.Ohio 1994); In re Crabtree, 32 B.R. 837, 839 (Bankr.E.D.Tenn.1983). For example, a fully secured creditor may join other eligible unsecured creditors whose claims aggregate at least $10,000 in the filing of an involuntary petition under Code § 303(b)(1). See id., citing 2 COLLIER ON BANKRUPTCY ¶ 303.08 (15th ed.1982). Under the appropriate circumstances, it is also possible for a fully secured creditor to waive all or part of its claim to become an eligible unsecured creditor. See id.; East-West, 106 B.R. at 771. Furthermore, an undersecured recourse creditor may file as a sole petitioner provided it is unsecured to the extent of $10,000 above the value of its lien.
In this case, Britain asserts that it is undersecured to the extent of at least $10,000. It also indicates that if its claim above the value of the property is less than $10,000, then it agrees to waive the amount necessary to reach the threshold amount of $10,000. The only impediment to allowing Britain to file an involuntary petition is the fact that its claim against Allen-Main is based on a non-recourse note.

*62 A non-recourse clause normally is intended to reduce the risks to the party granting the security interest if the secured party is later to foreclose on the security. See United States v. Stirling, 571 F.2d 708, 715 (2d Cir.), cert. denied, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978). By precluding the secured party from getting a deficiency judgment against him, the debtor contains the risk of loss to the security alone . . .
In re Vintero Corp., 735 F.2d 740, 742 (2d Cir.1984).
Code § 101(5) defines "claim" as "a right to payment, whether or not such right is . . . secured or unsecured." The Supreme Court in Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) found that "[t]he plain meaning of `right to payment' is nothing more nor less than an enforceable obligation. . . ." See id. at 559, 110 S.Ct. at 2131. With respect to a nonrecourse creditor in a chapter 7 case, the creditor's only claim or "right to payment" is limited to the value of its collateral; there is no right to recover payment on any deficiency. See In re 680 Fifth Ave. Assocs., 156 B.R. 726, 732 n. 8 (Bankr.S.D.N.Y.), aff'd, 29 F.3d 95 (2d Cir. 1994) (indicating that "a nonrecourse creditor is a creditor who has agreed to look only to its collateral for satisfaction of its debt and does not have any right to seek payment of any deficiency from a debtor's other assets." (citation omitted)); see also In re HRC Joint Venture, 187 B.R. 202, 214 (Bankr.S.D.Ohio 1995) (noting that "outside of Chapter 11, a nonrecourse deficiency claim is not recoverable from the estate. As a result, such a claim would be unrecoverable in a chapter 7 liquidation.").
Published cases addressing the issue now before the Panel are few. The only two dealing directly with the issue of whether an entity owed a nonrecourse debt is eligible to be the sole petitioning creditor in an involuntary case are East-West Assocs. and In re Sundown Assocs., 150 B.R. 156 (Bankr. E.D.Va.1992). Britain relies on both of these cases for the proposition that the nonrecourse nature of a sole petitioning creditor's claim is not a sufficient basis for dismissing an involuntary case commenced by the creditor. The court in Sundown provided little analysis of the issue, relying instead on the decision in East-West, as well as the Supreme Court's discussion of a "claim" in Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).
In Johnson the debtor had received a discharge in a prior chapter 7 case and then had filed a chapter 13 petition. The holder of the mortgage on the debtor's residence argued that it no longer had a claim against the debtor and, therefore, the debtor should not be able to include the mortgage in a chapter 13 plan. See id. at 81, 111 S.Ct. at 2152. The Supreme Court found that the mortgagee's right to foreclose on the real property, which survived the chapter 7 discharge, was an enforceable obligation or claim in that the mortgagee had a right to payment from the proceeds of the sale of the real property. See id. at 84, 111 S.Ct. at 2154. The court concluded that the claim, although enforceable only against the debtor's property, nonetheless was a claim "against the debtor" for purposes of the Code and, therefore, could be included in the debtor's plan. See id. at 85, 111 S.Ct. at 2155; see also 11 U.S.C. § 102(2) (stating that a "`claim against the debtor' includes claim against property of the debtor.").
The legislative history of Code § 102(2) indicates that the provision was
intended to cover nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally. Thus, such an agreement would give rise to a claim that would be treated as a claim against the debtor personally, for the purposes of the bankruptcy code. However, it would not entitle the holders of the claim to distribution other than from the property in which the holder had an interest.
H.R. Rep. No. 595, 95th Cong., 1st Sess. 315-16 (1977); S. Rep. No. 989, 95th Cong.2d Sess. 27-28 (1978). Thus, the only enforceable right to payment that a nonrecourse creditor normally has, although viewed as a claim against the debtor, is limited to the value of the debtor's property.
*63 As Allen-Main correctly points out, both East-West and Sundown, whose reasoning the bankruptcy court rejected, were decisions involving involuntary chapter 11 petitions. The court in East-West Assocs. rejected the debtor's argument that "the fact that the Petitioning Creditors' claims are non-recourse is fatal to their standing, because once the security is waived, the creditors are left with no claim against the debtor."[2]East-West Assocs., 106 B.R. at 771. The court concluded that the creditors were eligible to file the involuntary chapter 11 petition based on the finding that the "Bankruptcy Code makes no distinction between recourse and nonrecourse claims. . . ." Id.
It is true that in a chapter 11 the Code does not make a distinction between recourse and nonrecourse claims. Code § 1111(b)(1) allows a deficiency claim, whether the underlying debt is recourse or nonrecourse. See In re PCH Assocs., 949 F.2d 585, 604 (2d Cir.1991) (noting that "except in limited circumstances this section affords special protection to the undersecured nonrecourse creditors"). The only exceptions are when the class of creditors agrees to give up the deficiency claim or the collateral is sold during the pendency of the case or under the plan of reorganization. 11 U.S.C. § 1111(b)(1)(A)(i-ii).
However, Section 1111(b) applies only to proceedings under Chapter 11 of the Bankruptcy Code. For cases under chapter 7, Section 502(b)(1) rejects allowance of claims for nonrecourse obligations. Specifically, the legislative history with respect to the amendment of Code § 502(b)(1) in 1978 indicates that a claim is to be disallowed
to the extent that such claim is unenforceable against the debtor and unenforceable against property of the debtor. This [amendment] is intended to result in the disallowance of any claim for deficiency by an undersecured creditor on a nonrecourse loan or under a State antideficiency law, special provision for which is made in section 1111, since neither the debtor personally, nor the property of the debtor is liable for such a deficiency. (emphasis added)
124 Cong. Rec. H 11093, H 11095, H 11110 (Sept. 28, 1978).
Unlike the matter before the courts in Sundown Assoc. and East-West Assocs., Britain did not file an involuntary chapter 11 petition; it filed a chapter 7 petition. In a chapter 7 case a nonrecourse creditor has no claim or right to payment of any deficiency from either the debtor or the property of the debtor. Code § 303 clearly requires that a sole petitioning creditor establish a right to payment of at least $10,000 above the value of its lien in order to be eligible to file an involuntary chapter 7 petition. Britain has established no such right to payment. This is true even if, as Britain has suggested, it were to waive a portion of its secured claim. As a nonrecourse creditor, waiving its secured claim, or a portion thereof, does not change the fact that it has no right to payment against Allen-Main. Agreeing to waive a portion of its secured claim may reduce the amount of its lien against Allen-Main's real property but does not create a right to payment in excess of the amount of its lien pursuant to the terms of the nonrecourse mortgage note.
Britain has suggested that it is possible for a nonrecourse creditor to have rights against an entity that are not based on the note itself but are, instead, based on its mortgage and/or state law and would entitle Britain to assert an unsecured claim against Allen-Main.[3]See, e.g., In re Castle Mall, Inc., 127 B.R. 336, 339 (Bankr.D.Del.1991) (addressing an argument made by a creditor with a nonrecourse note that an assignment of rents provided a right to payment that arose as a result of the debtor's default on the note and its continued acceptance of rents from the lessees on the property.) In this case, Britain was aware that Allen-Main disputed its *64 eligibility to file the involuntary petition. As the sole petitioning creditor, Britain had the burden of proof of establishing its eligibility to file the involuntary chapter 7 petition at the evidentiary hearing. See Everett, 178 B.R. at 139. Britain should have been prepared at the time of the hearing on January 27, 1998, to present evidence of the existence of a "recourse carveout" whether based on the mortgage or on state law. Britain's counsel acknowledged that he did not have the mortgage document with him at the evidentiary hearing and it is not part of the record on appeal.[4]

CONCLUSION
Based on the above analysis, the bankruptcy court's dismissal of the involuntary petition should be affirmed.[5]
It is SO ORDERED.
NOTES
[1] Effective April 1, 1998, this amount was increased to $10,775.
[2] In that case, the "Petitioning Creditors" held mechanics liens against the alleged debtor's property which they agreed to waive to the extent of $5,000 in order to be eligible to file the involuntary petition.
[3] Even if such a claim did exist, Code § 303 requires that the creditor's unsecured claim must be neither disputed nor contingent in order to be included in the requisite aggregate amount of $10,000.
[4] On May 26, 1998, a separate motion panel of the BAP ("Motion Panel") granted a motion by Britain seeking inclusion of the "Memorandum of Allen-Main Associates Limited Partnership in Support of Dismissal of Involuntary Chapter 7 Petition" ("Trial Memorandum") in the record now before this Panel. Attached as an exhibit to the Trial Memorandum is a copy of the mortgage note but not the mortgage itself.
[5] On May 27, 1998, the Motion Panel granted an order consolidating two appeals, No. 98-50019 ("Part I") and No. 98-50030 ("Part II") on the basis that both involved similar questions of fact and law. On June 5, 1998, the parties agreed not to delay the oral argument of Part I herein. See Consent Order Staying Proceedings of Related Appeal, dated June 8, 1998. Part II, which has been stayed pending the issuance of the decision herein, involves an appeal of the award of attorney's fees to Allen-Main. This Panel concludes that Allen-Main's request for approval of costs and attorney's fees incurred subsequent to the entry of the bankruptcy court's order be determined in connection with the hearing on Part II of the consolidated appeal.